JANE VOORHEES, Appellant, *v.* GEORGE W. VOORHEES, Respondent.

A will destroyed in the life-time of the testator by the testator himself, acting under the undue influence of his son, may be admitted to probate, on establishing facts showing the existence and due execution of the will, and its destruction by reason of such undue influence.

A deed of the same premises by the testator to his son, which was devised by his will to the wife, may likewise be set aside, on proving that it was executed under the undue influence of the son, who also procured the destruction of the will.

The testator himself, while under undue influence, may be made the instrument of improperly destroying his own will.

*G. W. Danforth*, for the appellant.

*T. R. Strong*, for the respondent.

CLERKE, J.   This is an action, brought by the widow of James Voorhees, deceased, to set aside a deed made by him to the defendant, their son, conveying a farm containing 100 acres of land in the town of Romulus, and county of Seneca.   It is also brought for the purpose of proving and establishing a will of the said James Voorhees, which had been previously made, and which was afterward destroyed in his life-time; by which will fifty acres of the said land were devised to the plaintiff for life, and, after her decease, to the testator's children.   The alleged grounds of the action are, that James Voorhees had not sufficient mental capacity to make a deed or to revoke a will at the time of the execution of the one and the revocation or destruction of the other. He died about January 31, 1863, leaving the plaintiff and several children and grandchildren, his heirs-at-law, and next of kin, all of whom are defendants in this action. On the 2d of July, 1855, he made his last will and testament above referred to ; on the 2d of December, 1861, he executed the above-mentioned deed to his son, and, about the 1st of May, 1862, the said will was destroyed.

1. Proof of the execution and publication of the will was doubtless a necessary preliminary at the trial.   To authorize

the Supreme Court to allow an alleged lost or destroyed will to be proved as such, it is essential, first, to prove that it had been properly executed and published, pursuant to the requirements of the revised statutes, relative to the execution, attestation and publication of wills. The referee has expressly found that this will was duly executed and published by James Voorhees, as his last will and testament; but it is contended, by the appellant's counsel, that the referee had no evidence before him on which he could have based such a finding. I think that the counsel greatly errs on this point ; it appears to me, not only that there was evidence tending to prove the execution and publication, but none tending to contradict these facts. Brown and Kinne, the attesting witnesses, testify that Voorhees, the testator, could not write, but Coe, who had drawn the instrument, signed the name of Voorhees at his request, when the latter added his mark, and declared the instrument to be his last will and testament. He requested the witnesses to attest it, both being present; and both, accordingly, signed it, as witnesses. But, it is asserted, as Coe instructed him that it was necessary to declare it to be his last will and testament, and to request the witnesses to sign it, his having done so only "indicates acquiescence in the direction of Coe, but no intelligent action of the testator's mind, or expression of any wish on his part." If this is so, very few wills executed by men not of the legal profession, can be sustained. In most cases the precise circumstances occur which are disclosed in this case. Very few men intending to make a will examine the statute relative to the execution, attestation and publication of wills. They trust, exclusively, to the directions and suggestions of their legal adviser ; and, if he is prudent, he mentions the requirements of the statute in their proper order. In the present case the legal gentleman who had prepared the will, superintended its execution, and made the necessary suggestions in relation to what the statute required as to its execution and publication.

2. The counsel of the appellant, likewise contends, that there is no evidence to support the finding of the referee;

that James Voorhees executed the deed, and destroyed, or caused to be destroyed, the will, under the undue influence of Geo. W. Voorhees, and in belief in the truth of a false and fraudulent statement made by the said George. The counsel errs, also, on this point. If this case was tried before me as a judge or referee, I am by no means certain that I should have arrived at this conclusion of fact. The grantor was, I think, of sufficient mental capacity to make a valid disposition or conveyance of his property, if he was free from undue influence; but the referee had evidence before him that Voorhees was over eighty years of age, was intemperate in his habits, quite infirm physically, and so enfeebled in intellect that he might be easily misled and defrauded by one in whom he had confidence. It was also proved that the defendant, who was living with his own family, some miles distant from his father, went to his father's house and took him to his own house on a visit, and, while there, by misrepresentations, procured the execution of the deed in question. To say the least, there was some evidence of undue influence; consequently, we cannot disturb the finding of the referee on this subject.

3. Do the facts of this case bring it within the provisions of the statute relating to the probate of wills lost or destroyed? As we have seen, the referee expressly finds that James Voorhees destroyed, or caused to be destroyed, the will, under the influence of Geo. W. Voorhees. This finding was contained in his original report; but, afterward, during the settlement of the case, he adds to a finding that the will was destroyed by James Voorhees himself, *or* is lost. If this was the only conclusion purporting to be a finding, it probably would not be sufficient on which to base a legal conclusion. Being in the alternative, it is, in fact, no finding at all. But, as we have a finding, which is absolute on this point, it is not necessary to resort to the finding afterward introduced, even if it were to be deemed properly in the case; and the only question is, was any evidence before the referee tending to show that the will was destroyed by the testator himself, under the fraudulent influence and insti-

gation of Geo. W. Voorhees. As we have already seen, there was testimony tending to prove the feebleness of James Voorhees, mentally and physically, the undue influence exercised by his son over him, and his own declarations — which were admitted without objection — that he had destroyed the will. There was some evidence, therefore, tending to show that the will was destroyed by the testator himself, under the undue influence and at the instigation of Geo. W. Voorhees; and the finding of the referee, deduced from that evidence, cannot be disturbed.

4. The referee having decided, as a fact, that James Voorhees destroyed the will himself, under this influence, we have now to consider whether such a destruction is within the aim of the provisions of the statute relating to the proof and probate of wills lost or destroyed.

The language of the statute is, " No will of any testator, etc., shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the life-time of the testator." This language does not limit the act of destruction to any special instrumentality. To be sure, whatever might have been the motives of the testator himself, with his mind liberated from all external influences, fraud could not be predicated of the act. But, by the finding of the referee, the testator himself was not the only person who committed the act. The testator only consummated what was designed and put in motion by his son George; under whose sinister influence he did what, if left to the operation of his own untrammeled will, he would not have done. If George surreptitiously took possession of this instrument and destroyed it himself, no one would hesitate to say that it was fraudulently destroyed; or if, instead of destroying it with his own hands, he employed his next door neighbor to do so, neither will any one hesitate to say that the will was fraudulently destroyed. Under the finding, the testator, in the performance of this act, was as much the mere instrument of the fraudulent design of George, as the neighbor in the

example which I have just adduced. The counsel for the defendant lays down the broad proposition that "an influence to vitiate must amount to force and coercion, destroying free agency, a deprivation of the free exercise of one's own will, so that another's mind and not his own, must have *willed* the act complained of." The counsel means by " force and coercion " physical acts of violence. I certainly think he can find nothing in the elementary books, or in the cases to which he has referred, which can sustain such a proposition. In one of these cases (*Tyler* v. *Gardner*, 35 N. Y., 559) the whole tenor of the reasoning is against him. The influence exercised by Mrs. Tyler over Mrs. Gardner, her mother, was of the same nature as that exercised by George Voorhees over his father. There is a remarkable similarity in these cases. Mrs. Gardner, like James Voorhees, was in feeble health, her mind was impaired, under the active and controlling influence of the principal beneficiary, imbued with antipathy to a relative who would have profited from the estate if the act complained of had not been performed ; and this act involved a complete revolution of intention and an entire departure from a previous testamentary disposition. No influence amounting to force or coercion was in either case employed. The act was the result of persuasion and misrepresentation, operating upon a mind bereft of its own independent will, helplessly — as far as its innate energies were concerned — under the influence of another mind. I therefore regard *Tyler* v. *Gardner* as only strong authority in favor of the proposition that the established facts of the case before us brings it within the provisions of the statute relating to the proof or probate of wills lost or destroyed. The motion to dismiss the complaint was properly denied ; the objections to the rulings of the referee relative to the testimony, were not referred, and I presume they are abandoned too in the argument. At all events, I consider them untenable.

The judgment should be affirmed, with costs.

Judgment affirmed.