(Hamilton County Probate Court.)

## IN RE ESTATE OF FREDERICK AUGUSTUS LASANCE, DECEASED.

---

On probate of lost will.—

A lost will may be admitted to probate when it appears that the instrument was in existence after the death of the testator, unrevoked.

The burden of proof is upon the proponents to show that all of the formalities required by the statute were duly observed.

In cases of this character, secondary evidence may be introduced, where the subscribing witnesses are dead, and the

original will is shown to have been lost, to show not only the contents of the instrument, but also the observance of the formalities required by law.

The law lays down no inflexible rules in such cases, but accepts the best evidence that can be procured.

Statutory requirements should receive a liberal construction in cases of this character.

A copy of a will, made shortly after the death of the testator by his attorney, is admissible as proof of contents of the lost will.

---

FERRIS, J.

An application has been filed in this court for the probating of a certain instrument—a copy of which appears in a written contract that was entered into by persons representing themselves to be all of the beneficiaries and heirs at law, of Frederick Augustus Lasance.

By the instrument it will appear that on the 21st day of October, 1862, the testator appeared before one F. H. Rowekamp, and I. H. Plump, and executed, with all due formality, a paper writing, called a last will and testament. The instrument was shown by the evidence of parties who saw it, to have been in existence after the death of the decedent; and there was no evidence tending to show any facts that would indicate a revocation. The contract in writing introduced, indicates a disposition on the part of the beneficiaries to recognize the existence of the will, though attempting to avoid its consequences. There is no statute of limitations governing the production of a will for probate, and an application now filed, more than thirty-five years after the making of the will, seeks its admission to probate.

The testimony discloses that both of the subscribing witnesses are dead, and the original, having been lost or mislaid, can not be produced, and therefore the provisions of law applying to the admission of wills to probate by the establishment of the genuineness of the signatures can not be applied to the case at bar.

Section 5944 provides, that the probate court shall have full power and authority to admit to probate any last will and testament which such court may be satisfied was duly executed according to the provisions of the law upon the subject in force at the time of the execution of such last will and testament, and not revoked at the death of the testator, when such original will has been lost, spoliated, or destroyed, subsequent to the death of said testator, or after the testator has become incapable of making a will by reason of insanity, and it can not be produced in court in as full, ample and complete a manner, as such court now admits to probate last wills and testaments, the originals of which are actually produced in court for probate.

Section 5945 provides, that in such cases, where application shall be made for the admission to probate of a will duly executed, as provided in the preceding section, that written notice must be served upon all parties in interest within the county. The following section provides for the method of examination of witnesses, and then follows the conclusion, that if the court, upon proof, shall be satisfied that such last will and testament was duly executed in the mode provided by the law in force at the time of its execution, that the contents thereof are substantially proved, and that the same was unrevoked at the death of the testator, and has been lost, spoliated, or destroyed, subsequent to the death of the testator, etc., and shall find and establish the contents of said will as near as the same can be ascertained, and cause the same and the testimony taken in the case, to be recorded in said court and in any case in which a will has been, or may hereafter be lost, spoliated, destroyed, mislaid or stolen, after the same has been duly admitted to probate, but before it has been recorded, the court, upon notice, may admit the will to probate and the effect of such action, as provided by this section, is to give such instrument, thus admitted to probate, the full force and effect of passing real and personal property, and for all other purposes as if the original will had been admitted to probate and record.

It will thus be seen that the provisions of the law are sufficiently broad to enable the court to enter upon an examination to discover, first, whether or not, such last will and testament was duly executed in the mode provided by law in force at the time of its execution. The testimony upon this point, establishes clearly, that the instrument is before the court in its entirety. It was embodied in an instrument which was made shortly after the death of the testator verbatim et literatim, and this copy clearly shows that all formalities required by the law in existence at that time, were duly observed.

There is testimony which, in my judgment, establishes the fact that this will was seen by one of the parties to the contract, who testified to the court that he was present in the attorney's office after the death of the decedent, and saw the instrument lying upon the table. At this remote time, such testimony, unsupported, would scarcely have a convincing effect, and might possibly not be of sufficient weight to prove the existence of the instrument after the death of the testator. But the indubitable proof is found in the fact, that the parties who benefited by the will, and some whose interests were not affected therein, but who, under the inheritance laws of the state, in force at that time, would have received a portion of the estate, all

united in a contract which had for its object, the disposition of the estate in a manner not provided for entirely by the will. Their views, thus set forth in writing at that time, in connection with the will which formed a part of the contract, leaves no doubt in my mind as to the fact of the testator's death and the existence of this will thereafter, unrevoked.

The difficult question in cases of this character, is, to determine the requisite proof that should be required to establish an instrument so ancient as the one in question. In New York, in cases of this kind, where the provisions of a will are clearly and distinctly proved, by at least two credible witnesses, a correct copy or draft is held to be equivalent to one witness by the code of civil procedure. Sec. 1865.

But the legal existence of the will at the time of the death of the testator, may be proved by circumstantial evidence, (4th Demorest, p. 53), while a long line of decisions will be found to the effect that a lost will, not traced out of the testator's possession, will be presumed to have been revoked by him by destruction. 11th Wendell, 227, affirming 1st Edward, 148; Buckley v. Redmond, 2nd Bradford, 281; Holland v. Ferirs, 2nd Bradford, 334; Clark's Estate, 1st Tucker, 445.

Redfield, in his work on Surrogate Courts, 4th Ed., p. 206, speaking of the proof of execution and contents of a lost instrument, well states the rule, when he says, that the fact that a will is lost, or has been destroyed, does not affect the requisites to its due execution. These requisites must be proved as if the will were present. It can not be done, it is true, by the same description of evidence in all respects, but some evidence sufficient to show a compliance with the statute in all of its provisions must be given. Citing 1st Sanford's Chancery, 235; 39 N. Y., 463.

These facts are to be proved in the usual way as other facts must be proved, to make them evidence in a court of justice. While the statute requires rules to be observed of the execution and publication of wills, it does not so prescribe in regard to the execution and delivery of other written instruments. The proof of the several acts so prescribed, is the same as the proof required to establish any other fact. The law lays down no stubborn, inflexible rules in such cases, but accepts the best evidence that can be procured, adapted to the nature of human affairs, human infirmities and casualties, which tends with reasonable certainty to establish the fact in controversy. The statute requirements should receive a liberal construction in cases of this character. It is important to notice what the distinguished judge says, with the reference to the proof of lost or destroyed wills: "The case is heard upon the theory that the will is lost, that it is not in existence, and can not be produced, and therefore the case is one of secondary evidence exclusively."

Along this line it would be proper to introduce a draft of the will or a copy of the will, or a proof of its contents by parole. Beach on Wills, p. 131, citing numerous cases.

The same doctrine is affirmed by Jarman on Wills, 6th Ed., Chap. 7, p. 159. It will be noticed that all the authorities agree that, as a general rule, if it be shown by testimony, that a will is traced into the testator's possession, and, at his death, either can not be found, or is found torn or mutilated, the presumption, in the absence of circumstances tending to a contrary conclusion, is, that the testator destroyed or tore it animo revocandi. But, that if the will is traced out of the deceased's custody, it is incumbent on the party asserting the revocation to prove that the will came again into such custody, or was destroyed by his directions.

In this state, a declaration of the law will be found in the matter of St. Clair's Will, 5 Ohio St., p. 291, where, in a decision announced by Chief Justice Swan, the entire doctrine relating to proof of lost wills is discussed, and the reason of the law set forth: "It is beyond all doubt, that the whole subject of lost, destroyed, and spoliated wills, was before the General Assembly for its consideration and legislation; and that, as expressly as language could do, they confined their legislation to wills existing at the decease of the testator, and subsequently lost, spoliated, or destroyed. They prescribe the notice to be given of the proof of such wills, the mode of taking the proof, the final order of the court establishing the contents of the will, and the legal effect of the contents when so found and recorded. If all this legislative machinery was to establish a will, lost after the death of the testator, why is it that all provision whatever is omitted for the establishment of proof and record of a will lost before the decease of the testator? The answer is obvious: The General Assembly deemed it either impolitic, as opening the door to imposition and perjury, or unnecessary to permit wills lost or destroyed, before the decease of the testator to be established".

Perhaps the fullest discussion of this subject, citing the most recent cases and setting forth fully the laws of the various states, will be found in Woerner's first volume of The American Law of Administration, p. 480, sec. 221. He says that a will may, upon positive proof of destruction, or of diligent search and non-existence, be admitted to probate, but that the execution and attestation of a last will, must be proved with the same

certainty and fullness as in case of proving an existing will, including proof of the testator's sanity or testamentary capacity, and by the same witnesses which are required to prove a will produced for probate.

"* * *. The contents of a lost will upon which probate is prayed, must be proved clearly and distinctly, with a sufficient degree of certainty to establish the legacies and devises, and that none have been omitted. It was laid down by Swinburn, P. T., 6, sec. 14, P. L., 4, that if there be two unexceptionable witnesses who did see and read the testament written, and do remember the contents thereof, then these two witnesses, so deposing to the tenor of the will, are sufficient for the proof thereof in form of law. But it seems now to be held in England, that the contents of a lost will, like those of any other instrument, may be proved by secondary evidence; that they may be proved by the evidence of a single witness though interested, whose veracity and competency are unimpeached."

Now, applying these principles to the case at bar, we have, as conclusions of fact, an admitted copy of the last will and testament of Frederick Augustus Lasance, properly signed by the testator and witnessed in accordance with law; the existence of the original will. after the death of the testator, clearly shown, and, though both witnesses to the will are since deceased, and the impossibility of proving hand-writing being shown, this court now, under these authorities, finds from the testimony that this document was the last will and testament of the deceased, and that the proofs here introduced, clearly establish the validity of the document as a last will and testament entitled to probate. The testimony of the witnesses will be signed and made a part of the record.

A. M. Warner and O. F. Dwyer, for proponents.

L. M. Mongan, and George W. Hengst, contra.